## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| **DAVE S. YOND** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** 3:25cv861 |
| ) | |
| **EXPERIAN INFORMATION SOLUTIONS, INC.,** ) | |
| SERVE:  CT Corporation System, Reg. Agent ) | |
| 4701 Cox Rd., Ste. 285 ) | |
| Glen Allen, VA 23060-6808 ) | |
| ) | |
| **and** ) | |
| ) | |
| **CARRINGTON MORTGAGE SERVICES, LLC** ) | |
| SERVE:  CT Corporation System, Reg. Agent ) | |
| 4701 Cox Rd., Ste. 285 ) | |
| Glen Allen, VA 23060-6808 ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Dave S. Yond, by counsel, and for his Complaint against Defendants Experian Information Solutions, Inc. ("Experian"), and Carrington Mortgage Services, LLC ("Carrington Mortgage"), he states as follows:

### PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages, costs, and attorney fees brought to enforce Plaintiff's civil rights pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

2. Equifax, Experian, and Trans Union are the USA's major consumer reporting agencies (hereinafter, these 3 are collectively referred to as the "CRAs").

3.      The Fair Credit Reporting Act provides federally codified protection of Plaintiff's civil rights with regard to Plaintiff's privacy, Plaintiff's reputation, and Plaintiff's due process rights against defamation. The Fair Credit Reporting Act is part of a larger category of consumer protection statutes designed to arm consumers against discrimination, intrusions upon privacy, and other types of unfair and inequitable treatment. Similar statutes falling under this same umbrella of protection include, for example, the Equal Credit Opportunity Act, the Fair Housing Act, and the Fair Debt Collection Practices Act.

4.      Claims under these federal protections are brought "in connection with any action involving a claim of 'unlawful discrimination'", as described in 26 U.S.C § 62(a)(20). For the purposes of 26 U.S.C § 62(a)(20), the term "unlawful discrimination" is broadly defined in 26 U.S.C § 62(e) to mean "an act that is unlawful under . . .[a]ny provision of Federal, State, or local law, or common law claims permitted under Federal, State, or local law . . . providing for the enforcement of civil rights".

5.      Not only do inaccurate consumer reports lead to discrimination against consumers, but they also make it more difficult for banks and other finance companies to efficiently extend offers of credit to qualified individuals. The most obvious example occurs when a consumer applies for credit, is subsequently denied due to inaccurate information on their report, and the lender loses what would have been a potential customer. The inaccuracies not only harm the consumer, but they also deny the potential lender an opportunity to assess that consumer's creditworthiness accurately.

6.      In addition to relying on consumer reports to evaluate direct credit applications, many companies use CRAs to "prescreen" consumers' eligibility for particular offers.

In prescreening, a creditor or insurer establishes a set of specific credit criteria (such as a minimum credit score) and requests from a CRA the names, addresses, and

certain other information on consumers in the CRA's database who meet the specified criteria. Alternatively, the creditor or insurer may provide a list of potential customers to the CRA and request that the CRA identify which consumers on that list meet the established credit criteria.

BD. OF GOVERNORS OF THE FED. RESERVE SYS., *Report to the Congress on Further Restrictions on Unsolicited Written Offers of Credit and Insurance*, 7 (2004), Available at https://www.federalreserve.gov/boarddocs/rptcongress/UnsolicitedCreditOffers2004.pdf.

7.      If there is inaccurate information on a consumer's report, the CRA and lender may wrongfully exclude that consumer from certain "prescreened" offers. In this situation, the inaccuracies both preclude the individual consumer from receiving the credit offers and impede the lender's ability to use prescreening as a tool for "market efficiencies and better control of risks" *See, e.g., id*. at 10.

8.      The FCRA demands that CRAs utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

9.      The FCRA's accuracy provisions demand that CRAs take actual steps to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like Carrington Mortgage, particularly when a consumer makes a dispute about information reported.

10.      Also, when a consumer like Plaintiff disputes the accuracy of information through the CRAs, those disputes are transmitted to the party furnishing the information. Here, that entity is Carrington Mortgage (the "Furnisher" or "Defendant Furnisher"). The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

11.    Plaintiff brings claims under Section 1681e(b) against Experian because it reported inaccurate account information about Plaintiff regarding a paid-off (and obsolete) mortgage account with Defendant Furnisher Carrington Mortgage. When Plaintiff disputed the inaccuracies, Experian did not reasonably investigate, also violating Section 1681i.

12.    Experian's reporting of the Carrington Mortgage is not only inaccurate on its face, but the information is also obsolete. Pursuant to Section 1681c of the Fair Credit Reporting Act, with certain exceptions that do not apply here, Experian is prohibited from reporting negative information that is older than 7 years. Experian reported (and continues to report) negative information regarding the Carrington Mortgage account well beyond that time limit.

13.    Additionally, Experian is required—pursuant to Section 1681e(a) of the Fair Credit Reporting Act—to maintain reasonable procedures designed to avoid violations of Section 1681c. Experian's reporting of the Carrington Mortgage account clearly violates both 15 U.S.C. § 1681c and 15 U.S.C. § 1681e(a).

14.    The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly true as to how Experian has complied with its now 50-year-old obligation to conduct a meaningful accuracy investigation. Experian has been repeatedly sued by consumers, sanctioned by regulators, and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct. Had Experian followed that advice and heeded those warnings, Plaintiff would not have been harmed.

15.    Likewise, Carrington Mortgage violated the FCRA, Section 1681s-2(b), when it received Plaintiff's disputes from the CRAs and failed to reasonably investigate those disputes.

Instead, discovery will show all Carrington Mortgage did was consult its own records regarding the account and confirm to the agencies the inaccurate information it was already reporting. Carrington Mortgage failed to correct the derogatory reporting on Plaintiff's credit despite receiving ample notice that its reporting is inaccurate.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

17.     Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) & (2). All Defendants are residents of the Commonwealth of Virginia, Plaintiff resides in this District and Division, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Division.

## PARTIES

18.     Plaintiff is a natural person residing in the City of Fredericksburg, in the Commonwealth of Virginia, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

19.     Experian is a foreign corporation authorized to do business in the Commonwealth of Virginia through its registered agent in Glen Allen, VA.

20.     Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

21.     Experian disburses consumer reports to third parties under contract for monetary compensation.

22.     Carrington Mortgage Services, Inc. ("Carrington Mortgage" or "Defendant Furnisher") is a foreign corporation authorized to do business in the Commonwealth of Virginia through its registered agent in Glen Allen, VA.

23.     Carrington Mortgage is a "furnisher" of information as governed by 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

### *Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of Experian's Creditor-Customers*

24.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

25.     "The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and reasonable manner." *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted). "'These consumer

oriented objectives support a liberal construction of the FCRA,' and any interpretation of this remedial statute must reflect those objectives." *Cortez v. Trans Union, LLC,* 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond,* 45 F.3d at 1333).

26.    Over a decade ago, the Third Circuit apprised CRA Trans Union of the high duty of care imposed by Section 1681e(b):

[T]he distinction between "accuracy" and "maximum possible accuracy" is not nearly as subtle as may at first appear, it is in fact quite dramatic….

There are, of course, inherent dangers in including any information in a credit report that a credit reporting agency cannot confirm is related to a particular consumer. Such information is nearly always "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for ... credit." 15 U.S.C. § 1681a(d)(1). Allowing a credit agency to include misleading information as cavalierly as Trans Union did here negates the protections Congress was trying to afford consumers and lending institutions involved in credit transactions when it enacted the FCRA….

Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party….

Trans Union remains responsible for the accuracy in its reports under the FCRA and it cannot escape that responsibility as easily as it suggests here. Congress clearly intended to ensure that credit reporting agencies exercise care when deciding to associate information with a given consumer, and the record clearly supports the jury's determination that Trans Union did not exercise sufficient care here.

*Cortez v. Trans Union, LLC,* 617 F.3d 688, 709-10 (3d Cir. 2010).

27.    Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

28.    Section 1681i(a), on the other hand requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through their dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency of the directly… of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file … before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

29.    Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

30.    It has long been the law that a CRA, such as Experian, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item.  *See, e.g.*, *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely

contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

31.     That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997). Accordingly, "a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute." *Id.* The Court held that Trans Union's reading of Section 1681i(a) to require only parroting "would require it only to replicate the effort it must undertake in order to comply with § 1681e(b)[,] render[ing] the two sections largely duplicative of each other." *Id.*

32.     As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

33.     Further, as Experian is aware, Courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that CRAs have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . .." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation,"

necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

34.     It has long been the law – since 1970 in fact – that:

[W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Federal Trade Commission, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT

(July 2011), at 67.[1]

### *Sections 1681s-2(b) of The Fair Credit Reporting Act Also Places a Separate and Intentionally Redundant Duty on Furnishers Such as Carrington Mortgage to Perform a Detailed and Systematic Investigation of a Consumer's Dispute*

35.     Today, furnishers such as Carrington Mortgage have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2. The duties on furnishers were enacted almost thirty years ago, in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

36.     Furnishers' independent duties under the FCRA include independently investigating consumer disputes by reviewing all relevant information provided by the CRAs. Further, the furnisher must report the results of this investigation to the CRAs and accurately correct, update, or delete incorrect information previously reported to the CRAs.

37.     "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295,

---

[1] Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

1303 (11th Cir. 2016) (citations omitted). As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

> 357 F.3d 426, 430 (4th Cir. 2004).

38.     Additionally, Carrington Mortgage has long been aware that a furnisher must fully and accurately report to the CRAs the results of its investigation, including whether or not the consumer disputes such reporting. *Saunders v. Branch Banking and Tr. Co. Of VA*, 526 F.3d 142 (4th Cir. 2008) (Creditor's failure to report disputed nature of debt to all credit reporting agencies (CRAs), after receiving notice of dispute from one CRA, and conducting investigation and verification, was cognizable as violation of Fair Credit Reporting Act's (FCRA) duty to review and update reports for inaccuracies and omissions.)

***Plaintiff Discovers Experian Reporting Inaccurate Information regarding the Carrington Mortgage Account and Disputes Those Inaccuracies***

39.     In 2014, Plaintiff obtained an FHA mortgage (the "Mortgage") to purchase his then-residence in El Paso, Texas.

40.      On or around October 9, 2015, Plaintiff filed a petition for Chapter 13 Bankruptcy in El Paso, Texas (Case No. 15-31593-hcm).

41.     Plaintiff properly listed the Mortgage as a debt in his bankruptcy, and he provided for the Mortgage in the Chapter 13 plans that he filed with the bankruptcy court.

42.     At the time that Plaintiff filed his bankruptcy case, Wells Fargo Home Mortgage was the servicer for the Mortgage.

43.     Sometime during Plaintiff's bankruptcy, the Mortgage was transferred to Carrington Mortgage.

44.     In July of 2021, Plaintiff obtained permission from the bankruptcy court to sell the property that was encumbered by the Mortgage. As part of the sale, the Mortgage was paid in full.

45.     In or around December 2022, Plaintiff obtained a copy of his credit file with Experian and discovered Defendants were reporting inaccurate information regarding Plaintiff's paid off Mortgage account with Carrington Mortgage. Specifically, Experian was reporting the Carrington Mortgage account with a status of "Petition for Chapter 13 Bankruptcy".

46.      The reporting was inaccurate. Not only had the Mortgage had been paid in full, but it had been over 7 years and 180 days since Plaintiff filed his bankruptcy petition. Any tradelines mentioning Plaintiff's bankruptcy were obsolete and inaccurate pursuant to 15 U.S.C. § 1681c.

47.     The bankruptcy information reporting on the Carrington Mortgage account became obsolete on October 10, 2022.

48.     In or around December of 2022, Plaintiff disputed the inaccurate Carrington Mortgage account information with Experian.

49.     Experian forwarded Plaintiff's December 2022 dispute to Carrington Mortgage, and Defendants failed to delete the inaccurate and obsolete information from Plaintiff's credit file.

50.     In or around October of 2023, Plaintiff disputed the inaccurate Carrington Mortgage account information with Experian a second time.

51.     On or around October 27, 2023, Experian sent "dispute results" to Plaintiff. In those "dispute results", Experian told Plaintiff that the information he disputed had been "verified" as accurate, and that information unrelated to his dispute had been updated.

52.     In or around July of 2024, Plaintiff again disputed the inaccurate Carrington Mortgage account information with Experian.

53.     For the third time, Defendants failed to correct the inaccurate, derogatory, and obsolete reporting in response to Plaintiff's dispute.

54.     On or around August 4, 2025, Plaintiff obtained an updated copy of his credit report with Experian and discovered that Defendants were still reporting the derogatory and obsolete information in his Experian file.

55.     Upon information and belief, Defendants are continuing to report inaccurate, derogatory, and obsolete information on Plaintiff's Experian report.

***Experian Did Not and Does Not***
***Conduct Any Investigation of Most Consumer Disputes***

56.     Unknown to Plaintiff until this lawsuit, it has long been Experian's practice to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to a third-party outsource vendor located overseas.

57.     Experian uses a sister company, Experian Chile (or Experian Costa Rica) to process its mail disputes.[2]

58.     Experian affiliates use low-wage employees to work quickly to process consumer dispute letters received. The employees skim the letters and select one of a handful of codes from a dropdown menu to best describe the consumer's detailed dispute information in 2 digits. For example, the most common relevant code is: "01 Not his/her."

---

[2] Defendant Experian outsources its dispute procedures to an affiliated company, Experian Services Chile, S.A, in Santiago, Chile. Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 510 (D. Idaho 2013). Such was confirmed in a recent case in the Eastern District of Virginia with Plaintiff's Counsel opposing, wherein Experian produced its Chilean dispute investigator for remote deposition through a Rule 30(b)(1) notice without opposition. *Sublett v. Nissan of Richmond, LLC, et al.*, No. 3:20-cv-156 (E.D. Va.). To the extent Experian would argue here that it cannot produce its Chilean dispute agents pursuant to a Rule 30 notice, then Plaintiff will pursue his 1681i failure-to-investigate claim on the theory that no investigation whatsoever was conducted by the CRA.

59.     Experian Chile agents are not allowed to do any of the following things: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than 5 minutes per dispute.

60.     The dispute processing agents are not hired to perform actual FCRA investigations. Instead, the agent's sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu, and then click that code.

61.     In fact, Experian strongly encourages consumers to make disputes through its online website. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "The balance and/or past due amount are/is incorrect").  The online dispute then is outputted into the "e-Oscar" system described below without ever touching human hands or being read by human eyes at Experian. The dispute is sent to Experian's creditor customers (such as Carrington) for their sole review and consideration.

62.     Experian itself did not conduct any reinvestigation of Plaintiff's disputes. Instead, they merely caused the disputes to be removed from its control to be saved within a database by an overseas data-processing vendor.

### Experian Forwarded Plaintiff's Disputes
### to Carrington Mortgage, Who Did Nothing

63.     When Plaintiff disputed the Carrington Mortgage account with Experian, Experian forwarded Plaintiff's disputes to Carrington Mortgage using an electronic system called "e-Oscar," which is an industry-wide process by which consumer disputes are electronically communicated to furnishers and dispute results are electronically communicated back to Experian.

64.     On information and belief, e-Oscar is also the system by which Carrington Mortgage has agreed it will accept consumer disputes from Experian.

65.     For each instance in which Carrington Mortgage received one of Plaintiff's disputes from Experian, Carrington Mortgage became obligated under the FCRA to investigate that dispute.

66.     Plaintiff's disputes to Carrington Mortgage to attempt to have it investigate his complaints went unanswered.

67.     Carrington Mortgage failed to investigate Plaintiff's complaints.

68.     Despite Plaintiff providing Carrington Mortgage with ample notice that the reporting is inaccurate, Carrington Mortgage continued (and continues still) to report the derogatory information as "accurate" to Experian. Discovery will show that all Carrington Mortgage did when supposedly investigating Plaintiff's disputes from Experian was consult its own internal account records and simply report back to Experian the same inaccurate information Plaintiff was disputing.

69.     On dates better known to Experian and Carrington Mortgage, Experian furnished Plaintiff's disputes to Carrington Mortgage.

70.     Experian responded to Plaintiff's disputes, claiming the information was reported verified as accurate and the information was updated. This response confirms that Experian communicated Plaintiff's disputes to Carrington Mortgage.

71.     Upon information and belief, Experian timely notified Carrington Mortgage of Plaintiff's disputes, via e-OSCAR or otherwise, and provided the supporting documents with Plaintiff's disputes.

72.     Alternatively, Experian failed to notify Carrington Mortgage of Plaintiff's disputes, and/or failed to provide the supporting documents submitted with Plaintiff's disputes.

73.     By its actions as described herein, Carrington Mortgage furnished and communicated false credit information regarding Plaintiff.

*Plaintiff Suffered Actual Harm*

74.    Defendants continued to report the derogatory information on Plaintiff's credit even after being notified that the information is inaccurate. Upon information and belief, Defendants are *still* reporting the inaccurate, derogatory, and obsolete information on Plaintiff's credit file.

75.    As a result of the inaccurate and derogatory credit reporting, Plaintiff has suffered damages, including, but not limited to:

    a.  Harm to his credit scores and credit opportunities;

    b.  Loss of time attempting to correct the inaccuracies;

    c.  Stress associated with attempting to resolve this matter;

    d.  Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, including but not limited to: depression and anxiety; headaches; nightmares; heart palpitations; high blood pressure; irritability; sleep loss; feelings of shame, embarrassment and humiliation; harm to reputation; harm to job performance; harm to relationships; and loss of privacy.

*Defendants' Conduct was Willful*

76.    The FCRA allows for a remedy for a "willful" violation.  A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

77.    Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by Plaintiff and a failure to make the correction right

away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

78.     As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(a)-(b) has not changed.  The language of § 1681c has not changed. Experian's investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

79.     Experian has received numerous disputes and other complaints regarding the furnisher at issue in this case—sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

80.     Just in federal court alone, Carrington Mortgage has had to defend over 170 consumer credit lawsuits.

81.     In many of these FCRA lawsuits brought by a consumer, Experian was a named co-defendant.

82.     Experian knew or should have known of this litigation history.

83.     Experian uses and has access to PACER to investigate and monitor consumer complaints.

84.     The CFPB has maintained a Consumer Complaint database since 2017. It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to Experian, and/or to other government agencies, attorneys, or non-profit organizations.

85.     Both Defendants regularly receive unredacted consumer dispute details from this database.

86.     Since the database began accepting complaints, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Experian.

87.     Further, over 230,000 complaints about Experian were based largely on their failure to reasonably investigate consumer disputes.

88.     Just in the last 12 months alone, Experian has been sued by consumers alleging violations of the FCRA over 2,000 times. Most of these alleged that Experian violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute. This complaint history has been true for nearly every year over the last decade.

89.     While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Experian on notice of the failures of its dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed the CRAs on notice that they may not merely "parrot" what their creditor-customer tells them if the consumer had provided a substantive and detailed dispute.

90.     The CRAs, including Defendant Experian, have all had actual notice from numerous other courts that their blind ACDV "parroting" was unlawful. *See, e.g.*, *Centuori v. Experian Info. Sols., Inc*., 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'"); *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 (3d Cir. 2011); *Pourfard v. Equifax Info. Sols. LLC*, 2010 WL 55446 (D. Or. Jan. 7, 2010) ("[T]he caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information."); *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1073-74 (D. Or. 2011)("[Equifax] instead utilized an automated dispute system to verify the accuracy of plaintiffs' account. Many courts, including this one, have concluded that

when a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation.").

91.    Fellow CRA Equifax has even been warned by its home District Court, the Northern District of Georgia, which detailed:

> Equifax argues that the creditor is the party responsible for investigating the dispute, once notified of it by the reporting agency. 15 U.S.C.A. § 1681s-2(b) (1998). According to Equifax, the reporting agency's duty under § 1681i is fulfilled once it forwards the complaint to the creditor, the entity in the best position to undertake an accurate investigation. Under § 1681s-2(b), furnishers of information, such as creditors, have certain duties to investigate consumers' disputes. Yet, this does not end the inquiry, or establish that the reporting agency has no responsibility beyond serving as a conduit for consumers' complaints.
>
> To the contrary, a credit reporting agency does not conduct a reasonable investigation by deferring entirely to another source of information. "In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Stevenson,* 987 F.2d at 293. The FCRA "places the burden of investigation squarely on" the reporting agency. *Id.*; *see also Henson v. CSC Credit Servs.,* 29 F.3d 280, 286-87 (7th Cir. 1994); *Swoager v. Credit Bureau,* 608 F.Supp. 972, 976 (M.D. Fla.1985).

*Sampson v. Equifax Info. Servs., LLC*, No. CIV.A. CV204-187, 2005 WL 2095092, at *5 (S.D. Ga. Aug. 29, 2005).

92.    The CRAs have long had specific notice of these requirements. The seminal Circuit Court decision addressing § 1681i(a) and finding that a CRA does not conduct a reasonable reinvestigation of a consumer's substantive dispute if it merely "parrots" its creditor-customer was a Trans Union case. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). Defendants' notice was so substantial that another court instructed the jury in a § 1681i(a) trial:

> In assessing the issue of notice to Trans Union, you are instructed that, on several occasions since 1997, decisions of federal courts have informed . . . that the Fair Credit Reporting Act's Requirement for a reasonable reinvestigation must consist of something more than simply the parroting of information received from other

> sources and/or that a credit reporting agency does not act reasonably by deferring entirely to another source of information, such as a creditor.

*Mullins v. Equifax Info. Servs., LLC*, CIV. 3:05-cv-888 (E.D. Va. Aug. 27, 2007).

93.     The CRAs have also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

94.     In 2015, a large group of state Attorneys General forced a consent order from the CRAs by which they were required to develop procedures necessary to comply with the FCRA.[3] The AG Settlement required amongst many changes and mandates that Experian comply with § 1681i(a).

95.     The AG Settlement also required the CRAs, including Experian, to conduct significant research and data gathering—even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case. Notwithstanding these requirements, Experian did not meaningfully comply with the AG Settlement in these regards.

96.     In early 2025, almost two decades after the AG settlement, the Consumer Financial Protection Bureau sued CRA Defendant Experian, seeking injunctive relief, redress, disgorgement, and civil money penalties. In its Complaint, CFPB alleged that:

> Experian violated both [the Fair Credit Reporting Act and the Consumer Financial Protection Act of 2010] by failing to reasonably reinvestigate consumer disputes challenging the accuracy or completeness of information in consumer reports, including by failing to forward all relevant information to furnishers, failing to provide adequate or accurate notice to consumers of the outcome of their disputes, and failing to utilize reasonable procedures to ensure the accuracy and completeness of information in consumers' files.

---

[3]     *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

*Consumer Fin. Prot. Bureau v. Experian Information Solutions, Inc.*, 8:25cv24 (C.D. Cal. Filed Jan. 7 2025).[4]

97.      As the CFPB summarized, "Despite its obligations under the FCRA, Experian fails consumers who dispute information in their consumer reports at every step of the dispute process." *Id.*

98.      Experian is also aware of substantive and detailed criticism by public interest groups about its automated dispute system. For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading legal treatise in this field, also published a scathing research paper detailing the actual process followed by Defendants when a consumer makes a dispute. That report was updated in 2019. AUTOMATED INJUSTICE REDUX *Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors*, National Consumer Law Center, February 2019. ("NCLC Report").[5]

99.      The NCLC Report summarized its context:

Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and Trans Union), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

100.     Among many of the Defendants' accuracy failures, the NCLC Report discovered:

---

[4] *Available at* https://files.consumerfinance.gov/f/documents/cfpb_experian-information-solutions-complaint_2025-01.pdf
[5] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

- **Insufficient Information Conveyed and Considered in Investigation**. Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

- **Failure to Transmit Information Submitted by the Consumer**. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

- **Perfunctory Credit Bureau Investigations**. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two- or three-digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

- **Credit Bureaus Always Side with Furnishers**. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

101.    The overwhelming amount of public criticism and growing awareness of the CRAs' failures has led Experian to frequently push for arbitration in lieu of litigation. Addressing so many cases though arbitration has lowered Experian's exposure to justice through the court system. However, arbitrators recognize the substantial amount of evidence demonstrating that Experian willfully disregards the rights of consumers under the FCRA, and they are awarding damages accordingly. In *Duncan v. Experian Information Solutions, Inc*., which shared many similarities to the underlying facts in this case, Experian reported inaccurate information from PNC Bank on Mr. Duncan's Experian credit report. Although Mr. Duncan disputed the information with Experian, Experian failed to conduct any actual "reinvestigation" of Mr. Duncan's disputes, as required by Section 1681i of the Federal Fair Credit Reporting Act. Instead, Experian relied entirely on the

information sent to it by the "furnisher", PNC Bank. The arbitrator in the Duncan case ordered Experian to pay Mr. Duncan "for actual damages $400,000, together with $50,000 for each month it continues to report the PNC information, up to a maximum of another $300,000." The arbitrator further found Experian's violations to be willful, and ordered that Experian pay Mr. Duncan $700,000 in punitive damages.

102.     Proportionately similar to the litigation history against Experian, Carrington Mortgage has also been sued in federal court over 170 times for consumer credit claims by consumers – many involving alleged violations of the FCRA.

103.     Further, Since the CFPB database began accepting complaints, Carrington Mortgage has received approximately 380 complaints from consumers for reporting inaccurate information on consumer credit reports. Many of these complaints are about Carrington Mortgage not fixing a credit reporting error after receiving a consumer's dispute.

104.     Carrington Mortgage had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

105.     Carrington Mortgage had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

106.     Carrington Mortgage had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Johnson v. MBNA,* 357 F.3d 426 (4th Cir. 2004).

107.     Carrington Mortgage had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246 (4th Cir. 2017).

108.    Carrington Mortgage had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Bach v. First Union Nat. Bank*, 149 F. App'x 354 (6th Cir. 2005).

109.    Despite the notice and judicial, regulatory, and public interest criticism, Defendants have refused to change their dispute investigation process because they believe that it would cost too much money to do so.

110.    Defendants' procedures imposed on Plaintiff an unjustifiable and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

### COUNT I:
### VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681e(b)
### *against Experian*

111.    Plaintiff realleges and incorporates all factual allegations in the Complaint as if fully set out herein.

112.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff when it reported the inaccurate and obsolete account information from Defendant Furnisher Carrington Mortgage.

113.    As a result of Experian's violations of 15 U.S.C. §1681e(b) Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, time spent disputing the inaccurate information, mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, including but not limited to depression, anxiety, headaches, nightmares, heart palpitations, high blood pressure, irritability, sleep loss, feelings of shame, embarrassment, humiliation, harm to reputation, harm to job performance, harm to relationships, and loss of privacy.

114.    Further, after Plaintiff's disputes put it on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of their creditor-customer, Experian ignored that information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of Plaintiff's credit reports.

115.    Experian furnished multiple consumer reports to third parties containing the inaccurate Carrington Mortgage information and it did so after receiving notice of these inaccuracies.

116.    The violations by Experian were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

117.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Experian in amounts to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT II:**
**VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i(a)**
*against Experian*

118.    Plaintiff realleges and incorporates all factual allegations in the Complaint as if fully set out herein.

119.    Experian violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file.

120.    Experian violated 15 U.S.C. § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send to Carrington Mortgage all relevant information that it received with Plaintiff's disputes.

121.    Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff as to the Carrington Mortgage account.

122.    Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

123.    As a result of Experian's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, time spent disputing the inaccurate information, mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, including but not limited to depression, anxiety, headaches, nightmares, heart palpitations, high blood pressure, irritability, sleep loss, feelings of shame, embarrassment, humiliation, harm to reputation, harm to job performance, harm to relationships, and loss of privacy.

124.    The violations by Experian were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

125.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Experian in amounts to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT III
## VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(A) & (B)
### *against Carrington Mortgage*

126.    Plaintiff realleges and incorporates all factual allegations in the Complaint as if fully set out herein.

127.    Defendant Carrington Mortgage violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of Plaintiff's disputes after his disputes were furnished directly to it by Experian.

128.    Defendant Carrington Mortgage violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided when Experian forwarded Plaintiff's disputes to Carrington Mortgage.

129.    As a result of Carrington Mortgage's conduct, action, and inaction, Plaintiff suffered damage as alleged above, including by example only and without limitation: harm to his credit score and credit opportunities, time spent disputing the inaccurate information, mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, including but not limited to depression, anxiety, headaches, nightmares, heart palpitations, high blood pressure, irritability, sleep loss, feelings of shame, embarrassment, humiliation, harm to reputation, harm to job performance, harm to relationships, and loss of privacy.

130.    The violations by Carrington Mortgage were willful, rendering Carrington Mortgage liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Carrington Mortgage was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

131.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Carrington Mortgage in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT IV
## VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(C)-(D)
### *against Carrington Mortgage*

132.    Plaintiff realleges and incorporates all factual allegations in the Complaint as if fully set out herein.

133.    On one or more occasions within the past two years, by example only and without limitation, Carrington Mortgage violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the false information within Plaintiff's credit files with Experian in response to his disputes without also including an accurate notation that the debt was disputed and by failing to correctly report results of an accurate investigation to Experian.

134.    On information and belief, Plaintiff alleges that Carrington Mortgage rarely (if ever) adds the correct notation indicating that the account is disputed when it responds to the e-Oscar ACDVs.

135.    Plaintiff's disputes were, at minimum, bona fide.

136.    As a result of these violations of 15 U.S.C. § 1681s-2(b)(C) and (D), Plaintiff suffered actual damages including but not limited to harm to his credit score and credit opportunities, time spent disputing the inaccurate information, mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, including but not limited to depression, anxiety, headaches, nightmares, heart palpitations, high blood pressure, irritability, sleep loss, feelings of shame, embarrassment, humiliation, harm to reputation, harm to job performance, harm to relationships, and loss of privacy.

137. Carrington Mortgage was aware of the *Saunders v. Branch Banking & Trust* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Plaintiff's disputes.

138. On information and belief, Plaintiff alleges that the procedures followed regarding Plaintiff's FCRA disputes through e-Oscar were the procedures that Carrington Mortgage intended its employees or agents to follow.

139. On information and belief, Plaintiff alleges that Carrington Mortgage's employees or agents did not make a mistake in the way they followed Carrington Mortgage's procedures when they received, processed and responded to Experian's ACDVs and did not include a proper notation regarding the account being in dispute.

140. On information and belief, the Plaintiff alleges that Carrington Mortgage has not materially changed its FCRA investigation procedures regarding the notation of a dispute in ACDVs after learning of its failures in this case.

141. The violations by Carrington Mortgage were willful, rendering Carrington Mortgage liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Carrington Mortgage was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

142. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Carrington Mortgage in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT V
## VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(E)
### *against Carrington Mortgage*

143.    Plaintiff realleges and incorporates all factual allegations in the Complaint as if fully set out herein.

144.    Defendant Carrington Mortgage violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete information from Plaintiff's file after receiving Plaintiff's disputes from the CRAs and prior to the commencement of this action. This failure to correct Plaintiff's information resulted from Carrington Mortgage's failure to investigate as articulated herein, after Carrington Mortgage received notice of Plaintiff's disputes from Experian.

145.    As a result of this conduct (the action and inaction of Carrington Mortgage), Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, time spent disputing the inaccurate information, mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, including but not limited to depression, anxiety, headaches, nightmares, heart palpitations, high blood pressure, irritability, sleep loss, feelings of shame, embarrassment, humiliation, harm to reputation, harm to job performance, harm to relationships, and loss of privacy.

146.    The violations by Carrington Mortgage were willful, rendering Carrington Mortgage liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Carrington Mortgage was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

147.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Carrington Mortgage in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT VI**
**VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681c**
***against Experian***

148.    Plaintiff realleges and incorporates all factual allegations in the Complaint as if fully set out herein.

149.    Experian published reports regarding Plaintiff containing negative information that predated those reports by more than seven years, in violation of 15 U.S.C. § 1681c.

150.    Every account that was included in Plaintiff's bankruptcy schedules, including Plaintiff's mortgage, became obsolete—at the latest—after seven years from the date of Plaintiff's bankruptcy petition (October 9, 2015).

151.    The Carrington Mortgage account became obsolete on October 10, 2022.

152.    The FCRA has deemed such information to be unreportable.

153.    Discovery will show that Experian does little to ensure that the accounts it reports comply with the requirements of 15 U.S.C. § 1681c. Instead, Experian relies almost entirely on information provided by the "furnisher" (like Carrington Mortgage), even for accounts that were subject to a bankruptcy and have an obsolescence date that is publicly available and easy to verify.

154.    As a result of Experian's violations of 15 U.S.C. § 1681c, Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, time spent disputing the inaccurate information, mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, including but not limited to depression, anxiety, headaches, nightmares, heart palpitations, high blood pressure, irritability, sleep loss, feelings of shame, embarrassment, humiliation, harm to reputation, harm to job performance, harm to relationships, and loss of privacy.

155.    The violations by Experian were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the

31

alternative, Experian was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

156.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT VII**
**VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681e(a)**
***against Experian***

157.    Plaintiff realleges and incorporates all factual allegations in the Complaint as if fully set out herein.

158.    Section 1681e(a) of the FCRA requires that "Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title. . ."

159.    Every account that was included in Plaintiff's bankruptcy schedules, including Plaintiff's mortgage, became obsolete—at the latest—after seven years from the date of Plaintiff's bankruptcy petition (October 9, 2015).

160.    The Carrington Mortgage account became obsolete, at the latest, on October 10, 2022.

161.    The FCRA has deemed such information to be unreportable.

162.    Experian was still reporting the obsolete information on Plaintiff's credit files as recently as August of 2025.

163.    The obsolete Carrington Mortgage tradeline is the only reference to bankruptcy on Plaintiff's credit reports (with *any* of the CRAs).

164. If Experian had reasonable procedures designed to avoid violations of 15 U.S.C. § 1681c, it would not have continued to report the Carrington Mortgage for years after the Carrington Mortgage reporting became obsolete.

165. Discovery will show that Experian does little to ensure that the "date of first delinquency" information is accurate for the tradelines it reports, even for accounts that have been subject to a bankruptcy.

166. As a result of Experian's violations of 15 U.S.C. § 1681e(a), Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, time spent disputing the inaccurate information, mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, including but not limited to depression, anxiety, headaches, nightmares, heart palpitations, high blood pressure, irritability, sleep loss, feelings of shame, embarrassment, humiliation, harm to reputation, harm to job performance, harm to relationships, and loss of privacy.

167. The violations by Experian were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

168. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## DEMAND FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1)     Award Plaintiff actual and punitive damages for violations of the FCRA by

        Experian and Carrington Mortgage;

(2)     Award Plaintiff attorney's fees and costs under the FCRA;

(3)     Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4)     Award other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**.

**DAVE S. YOND**

By: /s/ *Leonard A. Bennett*
Leonard A. Bennett, VSB #37523
Mark C. Leffler, VSB #40712
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 - Telephone
(757) 930-3662- Fax
Email: lenbennett@clalegal.com
Email: mark@clalegal.com

Drew D. Sarrett, Esq., VSB #81658
**CONSUMER LITIGATION ASSOCIATES, P.C.**
626 E. Broad Street, Suite 300
Richmond, Virginia 23219
(804) 905-9900 - Telephone
(757) 930-3662 - Fax
Email: drew@clalegal.com

*Counsel for Plaintiff*